

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
- 2 2001
CLERK, U.S. DISTRICT COURT
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VANCE C. MILLER, | § § | |
| Plaintiff | § § | |
| V. | § § | CIVIL ACTION NO. CA 3-01CV1072-G |
| HENRY CUELLAR, in his capacity as The Secretary of State of Texas, and THE TEXAS STATE BOARD OF EDUCATION | § § § § § | |
| Defendants | § § | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Texas Secretary of State Henry Cuellar, in his official capacity, and the Texas State Board of Education, file this Brief in Support of their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6).

### I. INTRODUCTION

1. The purpose of Defendants' Motion to Dismiss is to preserve, protect, and defend the constitutional and statutory authority of the Texas Legislature to enact a new plan for the Texas State Board of Education ("SBOE") voting districts. In an attempt to usurp the prerogative of the Texas Legislature, Plaintiff has filed this complaint. Such an effort must be rejected, and this Court should dismiss Plaintiff's complaint for several reasons. First, this Court lacks jurisdiction because Plaintiff does not have standing to assert his claims. Second, this Court lacks jurisdiction over this complaint because Plaintiff's claims are not ripe.[1] Third,

---

[1] In the alternative, this motion argues that the prematurity of Plaintiff's claims demonstrates that Plaintiff has failed to state a claim upon which relief may be granted, thereby justifying dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff has filed this complaint in an impermissible venue. In order to preserve the State of Texas's right to address the issues raised by Plaintiff, Defendants file this Motion to Dismiss.

## II. BACKGROUND

A.  **Pending Texas Redistricting Litigation.**

2. On December 28, 2000, the day the Census Bureau reported state-by-state census totals to the President, three individuals filed suit in the Eastern District of Texas, Marshall Division, challenging Texas congressional districts. *Mayfield v. State*, No. 2-00CV268-DF, United States District Court, Eastern District of Texas, Marshall Division ("*Mayfield I*"). Various defendants filed motions to dismiss for lack of jurisdiction, raising, among other things, ripeness and standing. Judge David Folsom conducted a hearing in *Mayfield I* on March 8, 2001. On March 28, 2001, the court requested that the chief judge of the Fifth Circuit appoint a three-judge court and indicated that the motions to dismiss are "best left to determination by three judges." *Mayfield I*, Order of March 28, 2001. The chief judge of the Fifth Circuit appointed a three-judge court consisting of Judge King of the Fifth Circuit and Judges Hannah and Folsom of the Eastern District. After hearing oral argument on April 16, 2001, the three-judge court granted the motions to dismiss on April 26, 2001. A true and correct copy of this decision is contained in the Appendix to this Brief as **Exhibit 1** (Pages 1-12 of the Appendix). The three-judge court ruled that the plaintiffs lacked standing because they had not suffered an injury in fact and also ruled that the plaintiffs' claims were not ripe. *Id.* These holdings were based on the fact that the State still had an opportunity to enact a new congressional districting plan. *Id.*

3. On March 5, 2001, two individuals filed suit in the Tyler Division of the Eastern District of Texas, challenging Texas congressional and legislative districts. *Lee v. State*, No. 01-CV-98, United States District Court, Eastern District of Texas, Tyler Division. The same three-

judge court presiding over the *Mayfield I* case was appointed to hear the *Lee* case. Various defendants filed motions to dismiss in that case raising essentially the same issues that were presented in the motions to dismiss in *Mayfield I*. After hearing oral argument on April 16, 2001, the motions were granted on April 26, 2001, and the case was dismissed. A true and correct copy of this decision is contained in the Appendix to this Brief as **Exhibit 2** (Pages 13-25 of the Appendix). Like its decision in *Mayfield I*, the three-judge court ruled that the plaintiffs in *Lee* lacked standing and had asserted claims which were not ripe. *Id*. As in *Mayfield I*, these holdings were based on the fact that the State still had an opportunity to enact a new redistricting plan. *Id*.

    4.    On March 9, 2001, two individuals and an association filed suit challenging Texas congressional and legislative districts. *Associated Republicans of Texas, et al. v. State of Texas, et al.*, No. 01-CV-83, United States District Court, Western District of Texas, Waco Division ("*ART I*"). Various defendants filed motions to dismiss raising essentially the same issues that were presented in their prior motions to dismiss in *Mayfield I* and *Lee*. Like the three-judge court presiding over *Mayfield I* and *Lee*, a three-judge court consisting of Judge King of the Fifth Circuit and Judges Smith and Furgeson of the Western District of Texas dismissed the lawsuit for lack of standing and ripeness on May 8, 2001. A true and correct copy of this decision is contained in the Appendix to this Brief as **Exhibit 3** (Pages 26-32 of the Appendix).

    5.    The current lawsuit, which is the subject of this current Motion to Dismiss, raises the same type of redistricting claims as were raised in *Mayfield I*, *Lee*, and *ART I*, all of which were subsequently dismissed. The only difference is that Plaintiff's claims in this action solely focus on voting districts for the SBOE. This difference is of no consequence. From the standing, ripeness, and jurisdictional viewpoints, there is no difference between this complaint

and *Mayfield I*, *Lee*, or *ART I*. In his haste to file suit in a particular forum before he has suffered any injury, Plaintiff has not successfully invoked the jurisdiction of this Court.

B.  **Status of Texas Legislative Action on Redistricting.**

6. The State of Texas is working diligently at this moment to timely fulfill its constitutional duty to draw voting districts for the SBOE. Because of Governor Perry's request on May 26, 2001, State leaders are actively engaged in that process today. A true and correct copy of the letter containing Governor Perry's request is contained in the Appendix to this Brief as **Exhibit 4** (Page 33 of the Appendix). For example, on June 26, 2001, the Senate Committee on Redistricting held a hearing on proposed plans for SBOE voting districts. At that hearing, two alternative plans were discussed. On information and belief, Defendants believe that one of these plans was developed by Plaintiff. A citizen and various SBOE members testified at the hearing concerning the plans. Prior to this time, the Legislature has spent millions of dollars on sophisticated equipment intended to allow public and legislative member participation in the process of drawing election districts based on census data. The Legislature also has retained skilled personnel and technical and legal experts to assist it. Public hearings allowed for citizen input and the consideration of the myriad of potentially competing interests that must be addressed through the redrawing of election district boundaries. Even after the first regular session, Senate and House committees are continuing to informally formulate apportionment plans and draft the legislation for implementing such plans. It is important to allow those resources to be devoted to developing a consensus plan so that the Governor may consider calling a special session.

## III. ARGUMENT

### A. This Court Lacks Jurisdiction Because Plaintiff Lacks Standing to Assert His Claims.

7. Plaintiff has no standing to bring this complaint because he has not suffered any injury, nor is he in danger of being injured. As previously stated, the State's redistricting process has not yet run its course. The Senate and House are working on a SBOE voting plan and the Governor has indicated that he will call a special session when an acceptable plan is worked out. Accordingly, there is no reason to believe that the State will fail to enact a SBOE voting plan. It is pure speculation to assume that the State will not complete that task well before the next elections, which is the first time that Plaintiff could suffer any actual injury.[2] Further, it is pure speculation that Plaintiff will have any quarrel with any plan that is adopted by the State or that he will even suffer an injury. Plaintiff's alleged injury is hypothetical and speculative—not imminent and real. Accordingly, Defendants move to dismiss Plaintiff's complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. This Court Lacks Jurisdiction Because Plaintiff's Claims Are Not Ripe.

8. The United States Supreme Court has recognized that the census, although imperfect, represents "the only basis for good-faith attempts to achieve population equality." *Karcher v. Daggett*, 462 U.S. 725, 738 (1983). The Court has further explained that the constitutional requirement of population equality does not require "daily, monthly, annual or biennial reapportionment" and that decennial reapportionment "would clearly meet the minimal

---

[2] Plaintiff asserts that "the Board of Education is now unconstitutionally constituted through elections which violate the 'one man-one vote' principle." *See* Plaintiff's Complaint at 5. This assertion is without any merit. Plaintiff could only suffer injury if elections are held with malapportioned districts in place. No such elections have taken place, nor are any scheduled to take place until 2002.

requirements for maintaining a reasonably current scheme of legislative representation." *Reynolds v. Sims*, 377 U.S. 533, 583-84 (1964).

9. Plaintiff's malapportionment cause of action does not arise, at the earliest, until the 2000 census (or at least the portion of the census that permits analysis and redrawing of electoral districts) is published and the State has had an opportunity to act on that information. The State is currently actively engaged in that task. The Senate and the House are working on a SBOE voting plan and the Governor has stated his intention to call a special session for the purpose of adopting an acceptable plan. Plaintiff's complaint does not even acknowledge the prospect of a special session, much less explain how the claims contained in the complaint are now ripe. Plaintiff's claims presuppose that the State will fail to pass an acceptable SBOE districting plan. Given the State's current efforts, this asserted injury is entirely speculative.

10. Under such circumstances, federal courts have no legitimate role. Instead, federal courts must make every effort to avoid preempting or interfering with the state reapportionment process. As indicated by a unanimous United States Supreme Court in *Growe v. Emison*, 507 U.S. 25, 34 (1993):

> We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court. (citation omitted). *Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it.* (emphasis added).

11. Three separate three-judge panels have already considered essentially the same arguments made by Plaintiff in this case and concluded:

> In this case, there is no threat that an election will be held with the current districting scheme in place, and there is no reason to believe at this time that the Texas Legislature will fail to correct any malapportionment before the next election process begins.

*Mayfield I,* No. 2:00-CV-268, (E.D. Tex. April 26, 2001) slip op. at 5, contained in the Appendix to this Brief as **Exhibit 1** (Page 5 of the Appendix); *see also Lee v. State of Texas*, No. 6:01-CV-98 (E.D. Tex. April 26, 2001) slip op. at 6, contained in the Appendix to this Brief as **Exhibit 2** (Page 18 of the Appendix); *ART I*, No. W-01-CA-083 (W.D. Tex. May 8, 2001) slip op. at 5, contained in the Appendix to this Brief as **Exhibit 3** (Page 30 of the Appendix). These federal panels expressly found *both* the claims challenging the current districting scheme and the claims challenging the Legislature's alleged inability to redistrict before the 2002 election to be nonjusticiable. Plaintiff in the present case offers no argument that would distinguish the holdings and rationale of these federal court decisions. Five separate federal judges have heard these same arguments for standing, ripeness, and justiciability, and every judge has rejected them.

12. There is no existing case or controversy. Because this cause is not ripe, this Court has no jurisdiction and must dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, the foregoing demonstrates that Plaintiff has failed to state a claim upon which relief may be granted. Defendants hereby move for dismissal on that ground pursuant to Federal Rule of Civil Procedure 12(b)(6).

C. **<u>Plaintiff's Lawsuit Should Be Dismissed Because It Was Filed in an Improper Venue.</u>**

13. This Court is not a proper venue. 28 U.S.C. § 1391(b) governs venue in cases where federal question jurisdiction is alleged. Under that statute, a plaintiff may file suit in a judicial district where any defendant resides if all of the defendants reside in the same state. 28 U.S.C. § 1391(b)(1). None of the Defendants reside in this judicial district. A plaintiff may also file suit in the judicial district where a substantial part of the events or omissions giving rise to

the claim occurred. 28 U.S.C. § 1391(b)(2). The event that allegedly gives rise to Plaintiff's complaint is the State of Texas's alleged failure to properly apportion SBOE districts, which, of course, occurred in Austin, Texas, which is in the Western District of Texas. While the federal venue statute also provides for venue where a defendant may be found, this provision may only be utilized if there is no other judicial district where the lawsuit may be brought. 28 U.S.C. § 1391(b)(3). Because venue is proper in at least one other judicial district (*e.g.*, the Western District of Texas), this provision is inapplicable. No other permissible venues are described by 28 U.S.C. § 1391(b). Accordingly, Plaintiff's complaint should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

## IV. CONCLUSION

This Court lacks jurisdiction over Plaintiff's complaint. Therefore, Texas Secretary of State Henry Cuellar and the Texas State Board of Education respectfully request that this Court dismiss Plaintiff's complaint and grant Secretary Cuellar and the SBOE all other relief to which they may show themselves justly entitled.

Respectfully submitted,

LOCKE LIDDELL & SAPP LLP

*Andy Taylor*

Andy Taylor
Attorney-in-Charge
State Bar No. 19727600
100 Congress Avenue, Suite 300
Austin, TX 78701
Telephone: (512) 305-4700
Facsimile: (512) 305-4800

**ATTORNEYS FOR
DEFENDANTS**

C. Robert Heath
Steve Bickerstaff
BICKERSTAFF, HEATH, SMILEY,
POLLAN, KEVER & McDANIEL, L.L.P.
1700 Frost Bank Plaza
816 Congress Avenue
Austin, Texas 78701-2443
Telephone: (512) 472-8021
Facsimile: (512) 320-5638

**OF COUNSEL FOR
DEFENDANTS**

HOUSTON:052895/00011:649880v1

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Defendants' Brief in Support of their Motion to Dismiss has been served upon counsel listed below by placing same in the United States mail, postage prepaid, certified, and by Federal Express on this the 29th day of June, 2001.

Tom Thomas
Thomas & Culp, L. L. P.
1601 Elm Street, Suite 2300
Dallas, Texas 75201

                                        */s/ Andy Taylor*
                                        ANDY TAYLOR