ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VANCE C. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | 3-01CV1072-G |
| HENRY CUELLAR, in his capacity as | § | |
| The Secretary of State of Texas, and THE | § | |
| TEXAS STATE BOARD OF EDUCATION | § | |
| | § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

Plaintiff Vance C. Miller ("Miller") and Texas Attorney General John Cornyn, as legal counsel for Defendants Henry Cuellar, in his capacity as The Secretary of State of Texas ("Secretary of State"), and The Texas State Board of Education ("SBOE") submit this Joint Pretrial Order and state as follows:

### Summary of the Case

1. This is an action seeking a court-drawn redistricting plan for the SBOE. The Texas Constitution requires the legislature to redistrict the voting districts for the SBOE following the release of the United States decennial census, but the legislature has declined to do so. There is no state action pending to redistrict the SBOE. Subject to Defendants' motion to dismiss, which this court has denied, all parties agree that this Court has jurisdiction to order the redistricting and should do so as soon as possible.



## Stipulations

2. The Texas Constitution requires the legislature to redistrict the voting districts for the SBOE (Section 28, Article III) following the release of the United States decennial census, but before the next election. The 2000 census has been released, the results of which disclosed that the SBOE voting districts are not in compliance with Section 2, Article I of the United States Constitution since several districts are now disproportionately populated.

3. The Texas legislature did not redistrict the SBOE during its recent 77th regular session; The Governor of Texas has not called a special session for that purpose; there is no state action of any kind pending to redistrict the SBOE; and there are no other suits, state or federal, seeking redistricting of the SBOE.

4. Subject to the Defendants' motion to dismiss, which this Court has denied, this Court has jurisdiction to redistrict the SBOE. There is no impediment under the rationale of *Growe v. Emison*, 507 U.S. 25 (1993), to this Court's reapportioning the SBOE voting districts.

5. Miller is a resident of District 12, an overpopulated district according to the census.

## The "Miller Plan"[1]

6. Miller submits a redistricting plan, included with this Pretrial Order, which reasonably meets all federal and state redistricting requirements.

7. Miller's primary considerations were those of meeting federal constitutional and statutory requirements, particularly in the areas of (i) the one-person, one-vote requirements of Section 2, Article I of the U.S. Constitution and of the Equal Protection Clause of the Fourteenth

---

[1] This section of the Joint Pretrial Order was prepared and is submitted solely on behalf of Plaintiff Vance Miller.

JOINT PRETRIAL ORDER - Page 2

Case 3:01-cv-01072-G-L   Document 22   Filed 08/30/01   Page 3 of 7   PageID 59

Amendment, and (ii) the prohibitions against minority vote dilution in Section 2 of the Voting Rights Act and in the Fourteenth and Fifteenth Amendments.

    8.    The federal one-person, one-vote requirement is satisfied in the Miller Plan because all fifteen districts have only *de minimus* variations in population.[2] The ideal district population, calculated by dividing the total population of the state by fifteen, is 1,390,121. The districts in the Miller Plan are populated as follows:

| District | Population |
| --- | --- |
| 1 | 1,383,533 |
| 2 | 1,390,327 |
| 3 | 1,395,489 |
| 4 | 1,390,523 |
| 5 | 1,391,496 |
| 6 | 1,393,067 |
| 7 | 1,388,324 |
| 8 | 1,391,694 |
| 9 | 1,388,172 |

---

[2] Miller respectfully submits that the population deviation standard applicable to SBOE redistricting is that of the *de minimus* standard applicable to state legislatures rather than the exact equality standard applicable to Congressional redistricting. Clearly, under *Westberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526 (1964), the population within Congressional districts must be as close to precise mathematical equality as possible, and even slight deviations must be individually justified. However, the court applies a different standard in reviewing state reapportionment plans. The Supreme Court has articulated the standard as that of "nearly of equal population as is practicable," allowing leeway for minor population deviations. *Chapman v. Meier*, 420 U.S. 1, 95 S.Ct. 751 (1975); *Gaffney v. Cummings*, 412 U.S. 735, 93 S.Ct. 2321 (1973). The state standard, however, yields to an even more stringent standard in court-ordered plans, that being one of "approximate population equality" with further deviations being allowed if supported by historically significant state policies or unique features. The standard has been described as a *de minimus* standard. In an extensively reasoned District Court case, *Burton v. Sheheen*, 793 F.Supp. 1329, 1356 (D.S.C. 1992), the Court defined the applicable *de minimus* standard as being "approximate population equality, not exact population equality, coupled with justification." The court went on to say that there are, therefore, three types of court-ordered state legislative redistricting plans: those plans which meet the standard of *de minimus* deviation, those which do not meet *de minimus* standards but whose departure is justified by the court, and those plans which meet neither the standard nor are justified. Miller believes that his plan is within the standard of *de minimus* deviation, but even if not, the departures are justified by serious state policies.

JOINT PRETRIAL ORDER - Page 3

|    |           |
|----|-----------|
| 10 | 1,384,609 |
| 11 | 1,395,437 |
| 12 | 1,391,016 |
| 13 | 1,393,460 |
| 14 | 1,389,980 |
| 15 | 1,384,693 |

Several pertinent conclusions can be drawn from the population statistics. First, the overall population deviation, which is the difference between the two districts having the greatest population disparity, is only .86 percent. The average population deviation, which is the deviation of the average of all districts from the ideal population, is only .21 percent. Those variations, in light of the need for districts which are contiguous, compact and preserve the status of incumbents, are *de minimus* in a constitutional analysis.

9.   The Miller Plan does not dilute any minority voting rights. The variation minority population of each district is within *de minimus* standards of the minority population of the districts as populated before redistricting.

10.   A core feature of the Miller Plan is that of preserving incumbents within the existing districts.[3] The SBOE is an important, influential agency in Texas education and the many crucial issues now facing the state in that area. It is therefore of utmost importance that the

---

[3]   The policy of preserving incumbents is one recognized as a legitimate consideration by the courts. *Stevenson v. South Carolina State Conference of Branches of NAACP*, 459 U.S. 1025, 103 S.Ct. 1982 (1992)(speaking favorably of the policy of preserving incumbents so as to allow voters to have the opportunity to vote for a candidate who has served them well in the past as well as providing opponents a basis for judging the candidate). *See also, Arizonians for Fair Representation v. Symington*, 828 F.Supp. 684, 688 (D.Ariz. 1992), *affirmed* 507 U.S. 981, 113 S.Ct. 1573 (holding that in congressional redistricting the court should avoid unnecessary or invidious outdistricting of incumbents, stating that the maintenance of incumbents provides the electorate with some continuity, the maintaining of its relationship with its particular representative, and reasons to void accusations of political gerrymandering.) The Miller plan places this consideration as a priority above those of maximum compactness and the preserving of municipal or county boundaries so that the geographical shape of the districts is dictated primarily by population and the inclusion of the county of residence of each incumbent SBOE member.

SBOE's policies, attitudes and functions be continued in the most effective, efficient manner. There are only fifteen voting districts, many of which cover hundreds of miles. SBOE campaigns typically draw little interest and, as a result, are difficult to fund, but expensive to conduct because of the large number of people in, and the large geographical area of, the districts. Any redistricting plan which pits incumbents against each other, or creates a last minute rush for office, will be contrary to the best interests of the SBOE and the citizens of Texas in general.

### Other Plans[4]

11.   The Attorney General agrees that the Miller Plan meets all legal and constitutional requirements. The Attorney General does not object to the Miller Plan.

12.   However, to assist the Court in evaluating the impact of the Miller Plan and in adopting or drawing its own plan, the Attorney General is submitting to the Court two additional proposed plans, both of which also meet all legal and constitutional requirements. These two plans (which are being submitted under separate cover) are based on plans that were prepared by SBOE member Dan Montgomery and Texas State Senator Robert Duncan, and submitted to the Attorney General to be offered for the Court's consideration.

13.   The Montgomery and Duncan Plans, like the Miller Plan, meet all legal requirements. The total population deviation for the Montgomery and Duncan Plans is zero. The differences between the plans do not affect their legality, but instead reflect different preferences regarding which constituents to move between the various districts. The Attorney General is submitting reports to assist the Court in evaluating these differences.

---

[4]   This section of this Joint Pretrial Order was prepared by and is submitted solely on behalf of Attorney General John Cornyn.

JOINT PRETRIAL ORDER - Page 5

## Additional Matters

14. Counsel estimate a trial length of one day or less.

15. This Court's plan and judgment should also provide that at the next general election, one member shall be elected to the SBOE from each new district. Eight of such members shall serve four-year terms expiring on January 1, 2007, and seven members shall serve two-year terms expiring January 1, 2005. Members shall draw lots to determine who serves which terms. Members shall thereafter serve staggered terms of four years in accordance with Article 7.104 of the Education Code of Texas.

16. Miller expects to call as witnesses himself, one expert, and possibly several brief proponents of his plan.

17. The Attorney General expects to call as witnesses one expert and a few brief proponents of the Montgomery and Duncan Plans.

18. Counsel have stipulated that either side may introduce as evidence signed written statements from opponents and proponents of any proposed plan.

19. Miller has not had the opportunity to study and comment in this Pretrial Order on plans to be submitted by the Defendants. Miller expects to receive copies of such plans at the time of the filing of this Pretrial Order, to study such plans, and to offer comments regarding such plans at trial.

SIGNED this __30__ day of __August__, 2001.

_____
HON. A. JOE FISH, JUDGE

_____
HON. PATRICK H. HIGGINBOTHAM, JUDGE

_____
HON. SAM A. LINDSAY, JUDGE

APPROVED AND ENTRY REQUESTED BY:

THOMAS & CULP
1601 Elm Street, Suite 2300
Dallas, Texas 75201-4756
(214) 953-0000
(214) 953-1933 - FAX

By: _____
Tom Thomas
   TX Bar No. 19870000

ATTORNEYS FOR PLAINTIFF
VANCE C. MILLER


John Cornyn
ATTORNEY GENERAL OF TEXAS

By: _____  by Tom Thomas with permission
Jefffey S. Boyd
Deputy Attorney General for Litigation
TX Bar No. 02772150
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1886
(512) 463-2063 - FAX

ATTORNEY FOR DEFENDANTS HENRY CUELLAR,
in his capacity as The Secretary of State of Texas, and
THE TEXAS STATE BOARD OF EDUCATION

JOINT PRETRIAL ORDER - Page 7